# Exhibit A

## MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** (this "Agreement") is dated as of this [ ] day of [          , 20__] (the "Effective Date"), by and between Bloomberg L.P., a Delaware limited partnership with its principal offices located at 731 Lexington Avenue, New York, New York 10022 ("Bloomberg"), and [NAME OF SERVICE PROVIDER], a [STATE REGISTERED/INCORPORATED] [TYPE OF ENTITY OF SERVICE PROVIDER] with its principal offices located at [ADDRESS] ("Service Provider").

WHEREAS, Service Provider desires to provide certain services to Bloomberg, pursuant to this Agreement, upon Bloomberg's request from time to time (collectively, the "Services") as described in mutually agreed upon statements of work executed by the parties hereunder (each a "SOW") in the form of Exhibit A attached hereto and incorporated herein;

WHEREAS, Bloomberg desires to obtain the Services from Service Provider upon the terms and conditions set forth in this Agreement;

WHEREAS, Bloomberg has instituted an Environmentally Preferable Purchasing initiative to incorporate where Bloomberg deems appropriate goods and services that have a lesser or reduced effect on human health and the environment when specifically compared to other goods and services;

WHEREAS, as part of this initiative Bloomberg desires to purchase products and services that enable Bloomberg to implement continual improvement in resources conservation and pollution reduction;

NOW THEREFORE, in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Bloomberg and Service Provider agree as follows:

1. *Term and Termination.*

    (a)     This Agreement shall operate for a period of [     ] ( ) years, commencing as of the Effective Date (the Initial Term") and shall automatically renew for additional one (1) year terms ("Renewal Term(s)") unless either party elects not to renew by providing the other party with at least sixty (60) days written notice prior to the end of the Initial Term or any Renewal Term (all Renewal Terms, together with the Initial Term, hereinafter the "Term").

    (b)     Notwithstanding Section 1(a), in the event that either party breaches or fails to perform or observe any material term, obligation, agreement, covenant, representation or warranty set forth in this Agreement and/or any SOW(s), the other party may immediately terminate this Agreement and/or such SOW(s) upon written notice to the other party if such breach or failure is not fully remedied or corrected within twenty (20) days after delivery of written notice thereof to the party in default.

    (c)     Notwithstanding Section 1(a), either party may immediately terminate this Agreement and/or any SOW(s) upon written notice if the other party becomes insolvent, files a petition of bankruptcy, makes an assignment for the benefit of its creditors, sells

all or substantially all its assets to a third party, or becomes the subject of proceedings under any law relating to bankruptcy or the relief of debtors.

(d) Notwithstanding Section 1(a), Bloomberg may terminate this Agreement and/or any SOW(s) at any time for any reason or no reason upon not less than thirty (30) days written notice to Service Provider, without any further liability or obligation therefor except as otherwise set forth herein.

(e) Upon the termination of this Agreement for any reason (or, as applicable in the case of item (iii), upon the termination of any SOW(s) for any reason): (i) all SOW(s) then in effect shall automatically terminate, and Service Provider shall immediately cease performing Services under this Agreement and such SOW(s) unless otherwise directed in writing by Bloomberg; (ii) except as otherwise provided in this Section 1(e) or elsewhere in this Agreement or any SOW (as applicable), each party's respective rights and obligations under this Agreement and/or any SOW(s) shall automatically terminate; (iii) unless this Agreement and/or any SOW(s) have been terminated by Bloomberg under Sections 1(b) or 5(c), Bloomberg shall pay Service Provider compensation due for all undisputed invoices for Services and Deliverables (as defined below) actually rendered up to the effective date of termination of this Agreement and/or the applicable SOW(s), in accordance with Section 2, and such amounts shall be in full satisfaction of any obligation or liability of Bloomberg to Service Provider for payments due to Service Provider under this Agreement and/or such SOW(s); (iv) Service Provider shall promptly return to Bloomberg all Bloomberg Confidential Information (as such term is defined in the NDA, which is itself defined in Section 7), Bloomberg Materials (as defined below) and Deliverables, including works-in-progress related thereto, and all documents and materials relating thereto then in the possession or under the control of Service Provider or any Personnel (as defined below), and Service Provider shall certify to Bloomberg that it has complied with the foregoing; and (v) Bloomberg shall promptly return to Service Provider all Service Provider Confidential Information (as defined in the NDA) then in the possession or under the control of Bloomberg, and Bloomberg shall certify to Service Provider that it has complied with the foregoing.

(f) Termination of any SOW shall not terminate this Agreement or any other SOW(s).

(g) In the event this Agreement or any SOW is terminated before completion of any Deliverable(s), Bloomberg shall have the option of purchasing the work in progress of the applicable Deliverable(s) for a pro rata amount of the applicable Fees (as defined below) due for the completed Deliverable(s), in which event Service Provider shall deliver all such materials and related information to Bloomberg.

(h) Termination of this Agreement and/or any SOW(s) by either party shall not act as a waiver of any breach of this Agreement and/or any SOW(s) and shall not act as a release of either party from any liability for breach of such party's obligations under this Agreement and/or any SOW(s). Neither party shall be liable to the other for damages of any kind solely as a result of terminating this Agreement and/or any SOW(s) in accordance with its terms, and termination of this Agreement and/or any SOW(s) by a

party shall be without prejudice to any other right or remedy of such party under this Agreement or applicable law.

2. *Fees.*

(a) The total fees for the Services and Deliverables provided by Service Provider (the "Fees") shall be as set forth in each applicable SOW executed by the parties hereunder. Service Provider shall not invoice Bloomberg for, and Bloomberg shall not owe, Fees for any milestone set forth in a SOW (each, a "Milestone") prior to full completion and delivery of all Services and Deliverables corresponding to such Milestone and Bloomberg's acceptance of such Deliverables pursuant to Section 5, below. All Fees for any Services or Deliverables shall be due within thirty (30) days after receipt by Bloomberg of an undisputed and properly submitted invoice pre-approved in form by Bloomberg after Bloomberg's acceptance of such Services or Deliverables.

(b) For any purchase of material, or for charges in excess of the Fees, Service Provider must obtain the prior written approval of Bloomberg, which may be withheld by Bloomberg in its sole discretion. Service Provider agrees to receive payment via electronic transfer/automated clearing-house (ACH) into an account(s) as mutually agreed upon by the parties. All invoices shall be directed to Bloomberg L.P., 731 Lexington Ave, New York, New York 10022, to the attention of the Accounts Payable Department. Service Provider agrees to submit invoices via electronic data interchange (EDI) upon Bloomberg's request. All invoices shall be marked with the appropriate purchase order number.

(c) All travel expenses incurred by Service Provider must be approved in advance and in writing by Bloomberg and in all cases shall be subject to Bloomberg's then-current expense reimbursement policy. All pre-approved travel expenses reasonably incurred by Service Provider in the course of performing Services under this Agreement and/or any SOW(s) will be separately invoiced to Bloomberg, upon full completion and delivery of all such Services and related Deliverables and Bloomberg's acceptance of such Deliverables in accordance with Section 5, below. Such invoices, if submitted with all applicable receipts and other documentation, will be payable by Bloomberg net thirty (30) days from receipt of invoice.

(d) Notwithstanding anything to the contrary contained herein, Bloomberg's payment of Fee's and any expenses that are reimbursable pursuant to this Agreement shall be deemed waived by Service Provider if Service Provider fails to invoice Bloomberg for such Fees or reimbursable expenses within one hundred and twenty (120) days from the date required hereunder.

3. *Services and Personnel.*

(a) Service Provider shall take all steps necessary to commence, and shall commence, performance of the Services on the applicable start date set forth in each SOW. Service Provider shall perform the Services set forth in each SOW and provide the corresponding Deliverables in accordance with this Agreement and such SOW. Each SOW shall be subject to all of the terms and conditions contained in this Agreement, shall become

binding upon execution by each of the parties hereto and, upon execution, shall be incorporated into this Agreement by reference. Service Provider shall also perform, at no extra cost to Bloomberg, all other incidental and administrative services not specified in a SOW which are reasonably inferable from or necessary to obtain the results intended by and consistent with the performance of the Services. Bloomberg shall cooperate with Service Provider as reasonably necessary for Service Provider's performance of Services in accordance with this Agreement. However, notwithstanding anything to the contrary herein, Bloomberg shall at all times have the right to limit Service Provider's access to Bloomberg's premises.

(b)     The service provider hereby assigns the following individuals _____ as key personnel for Bloomberg's account (the "Key Personnel"). The Key Personnel shall remain actively involved with all aspects of servicing the Bloomberg facility, unless Bloomberg requests the removal of one or more of the Key Personnel for any or no specified reason. The account manager shall be available upon request to consult with Bloomberg personnel. The account manager shall not be replaced without the prior consent of Bloomberg provided, however, that if an employee leaves the service provider or otherwise becomes incapacitated, the service provider shall designate a replacement with the same level of experience, subject to prior approval of Bloomberg. In the event Bloomberg is not satisfied with the proposed candidate, Bloomberg shall have the right to terminate the service agreement by providing 20 days' notice. Furthermore, at any time during the Term, Bloomberg may, in its sole and reasonable discretion, notify Service Provider that Bloomberg wants Service Provider to replace particular employees, contractors, agents or other personnel performing Services on Service Provider's behalf (collectively, "Personnel"). Upon receipt of such notification, Service Provider shall immediately terminate such Personnel's performance of the Services and submit to Bloomberg, for Bloomberg's consent, which consent shall not be unreasonably withheld, the name and credentials of each individual whom Service Provider suggests as a replacement for the individual so terminated. Upon receipt of notification from Bloomberg of the acceptability of such proposed replacement, Service Provider shall cause such replacement immediately to commence the performance of the Services, or the applicable portion thereof.

(c)     Bloomberg may, in its sole but reasonable discretion, demand at any time that Service Provider remove specified Personnel from Bloomberg's premises. Bloomberg shall supply to Service Provider its reasonable rationale for such demand, and Service Provider agrees to immediately honor same. Notwithstanding anything to the contrary contained herein, all matters governing the terms and conditions of employment of Service Provider's Personnel shall be the sole responsibility of Service Provider including, but not limited to, the reporting, withholding and/or payment of all wages, benefits, unemployment, social security and other payroll taxes for its Personnel. Nothing contained in this Agreement shall be construed as creating the relationship of employer and employee between Bloomberg and the Personnel or granting to Service Provider or any of its Personnel any rights under any employee benefit plan, policies or procedures of Bloomberg.

(d)     Bloomberg shall have no responsibility for, and Service Provider shall indemnify, defend (subject to Bloomberg's approval rights over any settlement and right to assume

control of such defense at any time) and hold Bloomberg, its general partner, affiliates, employees and agents harmless from all actions, suits, liabilities, losses, costs, damages, claims and expenses (including, but not limited to, reasonable attorneys' fees) arising from or in connection with the employment or any terms of employment (including the termination of employment) of any Personnel by Service Provider.

4. *Representations, Warranties and Covenants.*

(a) Service Provider represents, warrants and covenants to Bloomberg and its affiliates that: (i) it has and shall maintain during the Term of this Agreement the proper licenses and rights to perform the Services; (ii) it shall diligently and timely provide the Services in a professional and workmanlike manner in accordance with the highest industry standards; (iii) it is in compliance with all applicable local, city, state, federal and international laws, rules and regulations including, but not limited to, all environmental, safety and health and labor and employment (including those addressing discrimination, harassment and retaliation) laws, rules and regulations, and shall remain in compliance during the Term of this Agreement; (iv) it is not under investigation with respect to, and is not threatened to be charged with and has not been given written notice of, any material violation of any law; (v) its response dated [INSERT DATE _____] to the Bloomberg L.P. Vendor Environmental Performance Survey was accurate and complete and continues to be true in all material respects, and that upon request Service Provider shall provide to Bloomberg ongoing reports and data pertaining to environmental or other aspects of the Deliverables which may be used by Bloomberg in its discretion to obtain certifications or achieve standards and in each case maintain them. [NOTE: THIS ASSUMES THAT THE VENDOR SURVEY HAS BEEN PROVIDED TO THE CONTRACTOR]; (vi) it does not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, disability or status as a disabled veteran, recently separated veteran, Armed Forces Service medal veteran, other protected veteran or any other legally protected status; (vii) it engages in affirmative action to the extent required by law and is in compliance with Executive Order 11246, the Rehabilitation Act of 1973, the Vietnam Era Veteran's Readjustment Assistance Act of 1974 (VEVRA), the Jobs for Veterans Act of 2003 (JFVA), the Small Business Act, 15 U.S.C. §631 et seq., and their implementing regulations, including, but not limited to, 41 C.F.R. §60-1.1 et seq., 41 C.F.R. §60.741.1 et seq., 41 C.F.R. §60.250.1, et seq., 48 C.F.R. §52.219-1 et seq. and Executive Order 13201 29 CFR Part 470; (viii) it has established adequate safety standards and protocols and that the Personnel shall follow such standards and protocols and be in compliance with the Occupational Safety and Health Administration Act ("OSHA"); (ix) it shall instruct the Personnel in any safety standards and protocols promulgated by Bloomberg, or the management of a facility occupied by Bloomberg, and that the Personnel shall follow such standards and protocols; (x) the Personnel shall have the necessary experience, qualifications, knowledge, competency and skill set necessary to perform the Services pursuant to this Agreement; (xi) the Personnel are approved and authorized to work in the United States under all rules and regulations of the Immigration and Naturalization Service of the United States, if applicable. At any time, Bloomberg may request Service Provider to present copies of Service Provider's programs, policies and/or documentation as to any training provided by Service Provider to the Personnel including, but not

limited to, OSHA-related training; (xii) to the extent practicable, it shall seek to use products certified under the "Green Seal" certification process, or, at Bloomberg's discretion, a comparable standard, under the most recent version of the applicable standard for all goods or products used to provide the Services and Deliverables, and in any event shall conform to all applicable requirements of law, and Service Provider shall be responsible for ensuring that such products will not adversely affect the quality or results of the Services and Deliverables; (xiii) it shall use reasonable efforts to avoid employing any persons or using any labor, or using or having any equipment, or permitting any condition to exist which shall or may cause or be conducive to any labor complaints, troubles, disputes or controversies which interfere or are likely to interfere with the operation of Bloomberg under this Agreement; and (xiv) it is not aware, and shall promptly notify Bloomberg if it becomes aware or reasonably foresees, that any labor union will claim jurisdiction over any aspect of the Services performed hereunder, and shall provide Bloomberg with information, as requested, with respect to any such claim.

5. *Delivery and Acceptance.*

(a) Service Provider shall deliver the Deliverables to Bloomberg in accordance with the terms and conditions of this Agreement and the applicable SOW(s). All Deliverables shall be subject to acceptance testing by Bloomberg in accordance with the procedures set forth in this Section 5.

(b) Bloomberg shall have a period of thirty (30) business days (or other mutually agreeable acceptance period as set forth in a specific SOW) after the delivery and/or installation (as applicable) of all Deliverable(s) corresponding to each Milestone in a particular SOW (the "Acceptance Period") to review and test such Deliverable(s) and notify Service Provider of its rejection of any such Deliverable(s). Service Provider shall correct the rejected Deliverable(s) and deliver such corrected Deliverable(s) to Bloomberg within ten (10) business days (or other mutually agreeable correction period as set forth in a specific SOW) after the date of such notice (the "Correction Period"). Bloomberg shall have an additional period of thirty (30) business days (or other mutually agreeable acceptance period as set forth in a specific SOW) after the delivery and/or installation (as applicable) of such corrected Deliverable(s) (the "Additional Acceptance Period") to review and test the corrected Deliverable(s) with the other Deliverable(s) corresponding to the same Milestone, and to notify Service Provider of its rejection of any such Deliverable(s). If Bloomberg does not provide Service Provider with written notice of its rejection of any Deliverable(s) within the applicable Acceptance Period or Additional Acceptance Period, such Deliverable(s) shall be deemed accepted by Bloomberg.

(c) In any event, if Service Provider fails to correct and redeliver any rejected Deliverable(s) within the applicable Correction Period, or if Bloomberg rejects any Deliverable(s) after receiving corrected Deliverable(s) pursuant to Section 5(b) above, Bloomberg shall have the right to terminate this Agreement and/or the applicable SOW(s) upon written notice to Service Provider, in which event Service Provider shall immediately refund to Bloomberg any and all Fees and other amounts paid by Bloomberg to Service Provider in connection with the applicable SOW(s).

(d)     To the extent that the Services and Deliverables involve work performed at Bloomberg premises, Service Provider shall remove and arrange for the recycling or disposal in accordance with all applicable laws of all packaging and wastes generated by the delivery or provision of the Services and Deliverables. Service Provider agrees that Service Provider and not Bloomberg owns such packaging and wastes and Service Provider shall use commercially reasonable efforts to recycle as much of the waste as possible. Service Provider further agrees that it shall provide Bloomberg a certificate of recycling and other waste disposal documentation upon request.

6.     *Oversight and Administrative Services.*

Service Provider assumes full responsibility, control and total liability, at all times, for the Personnel including, but not limited to, all labor and employment relations and the Personnel's conduct, attendance (including punctuality), performance and ability to work with Bloomberg staff and authorized third parties. All on-site supervision, if applicable, assignments and evaluations of the Personnel are the sole responsibility of Service Provider. If requested by Bloomberg, and at no additional cost to Bloomberg, Service Provider shall make quarterly quality control inspections of its operations and the activities of the Personnel and shall report to Bloomberg its findings and recommendations. Service Provider shall also provide all administrative services in connection with the performance of this Agreement as reasonably requested by Bloomberg at no additional cost to Bloomberg.

7.     *Confidential Information.*

Both parties agree to be governed by the terms and conditions of the executed Mutual Confidentiality and Non-Disclosure Agreement attached hereto and incorporated herein as Exhibit B (the "NDA"). In the event of a conflict between the terms and conditions of this Agreement and the NDA, the terms and conditions of the NDA shall prevail. Service Provider agrees that it shall not provide, whether by virtue of the Services or otherwise, or take any actions which would require Bloomberg to provide, any of Bloomberg's or its affiliates' proprietary source code to any third party.

8.     *Title to Property and Information.*

(a)     All right, title and interest in and to all property, data, information, equipment, supplies and materials provided by Bloomberg or its affiliates (the "Bloomberg Materials") shall remain at all times vested in Bloomberg or its affiliates, and nothing contained herein shall be deemed in any way to transfer any ownership or other interest therein to Service Provider. All ideas, inventions, discoveries, creations, improvements, concepts, developments, methods, tools, know-how, trade secrets, works of authorship, documentation, templates, processes, techniques, data, programs, reports, information, materials, designs, drawings, specifications, plans and other documents of any kind whatsoever prepared or created by or on behalf of Service Provider, any Personnel and/or any Bloomberg or its affiliates' personnel in connection with, pursuant to or resulting from the Services (the "Deliverables") shall be the sole property of and belong to Bloomberg. The term "Deliverables" shall not be deemed to include any Service Provider Materials or Third Party Materials (as such terms are defined below). Upon request by Bloomberg or termination of this Agreement, Service Provider shall

immediately provide Bloomberg with all Bloomberg Materials and all Deliverables, including works-in-progress related thereto, then in the possession or under the control of Service Provider or any Personnel. All right, title and interest in and to the Deliverables, including all intellectual property rights therein, shall be deemed "works for hire" (as that term is defined in § 101 of the 1976 Copyright Act) and shall reside with Bloomberg or its affiliates without further employment of, or payment of additional compensation to Service Provider or any Personnel. To the extent that any Deliverables are determined, by a court of competent jurisdiction, the Register of Copyrights or otherwise, not to be work made for hire, Service Provider shall be deemed hereby to have assigned to Bloomberg or its affiliates all its right, title and interest, including without limitation all copyrights or other intellectual property, in such Deliverables. At any time, from time to time and upon the reasonable request of Bloomberg or its counsel, and at Bloomberg's expense, Service Provider shall execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered: (i) all such further deeds, assignments, transfers and conveyances requested by Bloomberg for the better assigning, transferring, granting, conveying and confirming to Bloomberg, its affiliates, or its successors and assigns, or for aiding and assisting in collecting and reducing to possession, any or all of the Deliverables, and (ii) such instruments of assignment, transfer, conveyance, endorsement, direction or authorization and other documents to perfect title of Bloomberg and its successors and assigns to the Deliverables or otherwise to effectuate the purposes of this Agreement. Service Provider shall enter into written agreements on these same terms with all Personnel, including both Service Provider's regular employees and any outside contractors, creating work in connection with the Deliverables and shall make any such agreements available for review by Bloomberg at Bloomberg's request.

(b)     Notwithstanding the above, Bloomberg acknowledges that the Deliverables may contain general know-how, materials, tools and other intellectual property proprietary to and developed by Service Provider prior to the effective date of the corresponding SOW(s), which are used or useable in connection with the providing of products and services by Service Provider to other persons, firms and entities. Accordingly, Bloomberg agrees that, provided Service Provider does not breach Section 7 or 8 hereof, Service Provider may use all such know-how, materials, tools and other intellectual property, if any, agreed by the parties and expressly designated in the applicable SOW(s) as "Service Provider Materials" in connection with the providing of products and services to others, subject to the terms and conditions of this Agreement. All rights in such Service Provider Materials, if any, shall continue to vest in Service Provider. Should such Service Provider Materials form a part of the Deliverables or be necessary for Bloomberg to use the Deliverables, Service Provider hereby grants to Bloomberg and its affiliates a non-exclusive, perpetual, worldwide, fully paid, non-cancelable license, with a right freely to sublicense, to use the Service Provider Materials in conjunction with the Deliverables. Nothing contained in this clause shall be construed to grant Bloomberg or its affiliates any right to use or exploit such Service Provider Materials in a stand-alone form or not otherwise in conjunction with the Deliverables.

(c)     In the event Service Provider incorporates or uses any third-party materials, including without limitation software, in the Deliverables, as agreed by the parties and expressly designated in the applicable SOW(s) as "Third Party Materials," Service

Provider shall: (i) secure for itself all the necessary licenses to develop the Deliverables; and (ii) assist Bloomberg in its efforts, to the extent requested, to secure for Bloomberg a non-exclusive, perpetual, worldwide, fully paid, non-cancelable license, with a right freely to sublicense, to use the Third Party Materials in conjunction with the Deliverables.

(d) Except upon prior written consent of Bloomberg and then upon specific identification in the applicable SOW, in no event shall Service Provider use any Open Source Materials in the creation or development of any Deliverables or include, incorporate, combine or commingle any Open Source Materials in or with any Deliverables (any such use, inclusion, incorporation, combination or commingling, an "Open Source Use"). "Open Source Materials" means software or related documentation which is licensed or otherwise made available pursuant to terms that directly or indirectly, as a result of an Open Source Use: (1) create, or purport to create, obligations for, or a waiver of rights by, Bloomberg with respect to the Deliverables or any derivative work based thereupon; (2) grant, or purport to grant, to a third party or the general public any rights to Bloomberg's or its affiliates' intellectual property, or proprietary rights in the Deliverables or any derivative work based thereupon, or any immunities from suits or actions in connection therewith; or (3) require, or purport to require, the licensing, disclosure or distribution of source code or executable versions of the Deliverables, any derivative work based thereupon or such Open Source Materials, or of any licensing terms governing or information relating to such Open Source Materials.

(e) Except as expressly provided in Sections 8(a), 8(c) or 8(d), above, the Deliverables shall not incorporate or require the use of any Third Party Materials, Service Provider Materials or Open Source Materials. Service Provider shall inform the Personnel, in writing, of the restrictions on the use of Third Party Materials, Service Provider Materials and Open Source Materials set forth herein.

(f) Except for the Service Provider Materials, Third Party Materials and/or Open Source Materials, if any, Bloomberg shall own the Deliverables and shall have the right to modify, edit, destroy, license, exploit or use in any way the Deliverables and the results and proceeds thereof without compensation (other than any applicable Fees) to or consultation with Service Provider or any Personnel. Nothing herein, however, shall be construed to obligate Bloomberg to use any Deliverables. For the avoidance of doubt, Bloomberg shall not be obligated to enter into further agreements with Service Provider, including any agreements in connection with the Deliverables, and shall have the right to use the Deliverables on further projects handled by Bloomberg directly or through the use of any third-party vendor.

(g) Bloomberg hereby grants to Service Provider a non-exclusive, limited, fully paid license during the Term to use the Bloomberg Materials and the Deliverables for the sole purpose of performing Services for Bloomberg in accordance with the terms and conditions of this Agreement and any SOW. All rights not expressly granted to Service Provider hereunder are expressly reserved to Bloomberg.

9.  *Advertising or Publicity Releases.*

Service Provider shall not refer to or identify Bloomberg or its affiliates, or use Bloomberg's or its affiliates' name or marks or any likeness thereof or marks similar thereto, in any marketing, advertising, press releases or public statements without prior written consent by Bloomberg.

10. *Risk of Loss and Insurance.*

    (a)  Service Provider shall be liable for any loss, theft, damage or destruction suffered by Bloomberg or its affiliates resulting from the acts or omissions (whether innocent, negligent, reckless, willful or otherwise) of Service Provider and/or any Personnel, including any indirect, incidental, consequential, punitive, special or other similar damages.

    (b)  Service Provider shall maintain, at its own expense, in full force and effect during the Term of this Agreement, a minimum of: three million dollars ($3,000,000) in comprehensive general liability insurance (each occurrence) and a minimum of five million dollars ($5,000,000) in comprehensive general liability insurance (aggregate); workers' compensation, as required by the local jurisdiction having authority; a minimum of three million dollars ($3,000,000) in employers' liability (each accident) and a minimum of three million dollars ($3,000,000) in employer's liability (each employee); a minimum of five million dollars ($5,000,000) in excess liability (each occurrence) and a minimum of five million dollars ($5,000,000) in excess liability (aggregate). All such insurance shall specifically name Bloomberg, its agents and employees as additional insureds for all claims arising out of this Agreement. Service Provider shall supply Bloomberg with certificates evidencing the coverage's required herein and the designation of Bloomberg, its agents, affiliates and employees as additional insured. Service Provider must notify Bloomberg immediately upon any termination or reduction in insurance coverage. All other required local, city, state and federal insurance, certificates or disability and unemployment benefits shall also be secured and maintained by Service Provider during the Term of this Agreement.

11. *Indemnity.*

Notwithstanding anything contained herein, Service Provider shall defend (subject to Bloomberg's approval rights over any settlement and right to assume control over such defense at any time), and indemnify and hold Bloomberg, its general partner, affiliates, employees and agents harmless from and against all actions, suits, liabilities, losses, costs, damages, claims or other expenses of every kind and description, including, but not limited to, reasonable attorneys' fees, arising as a result of or in connection with: (i) the provision of the Services by Service Provider and/or any Personnel; (ii) any act or omission of Service Provider and/or any Personnel; (iii) any material breach of this Agreement, or any breach of any representation or warranty set forth herein, by Service Provider and/or any Personnel; (iv) any claims raised by or on behalf of any Personnel by federal, state or local governmental agencies or any authorized representative of the Personnel; and (v) any claim alleging that the Services and/or Deliverables or any portion thereof infringe upon or misappropriate or violate the patents, copyrights, trademarks, trade secrets, database or any other intellectual property rights or the rights of publicity or privacy or other proprietary rights of any third party, including, but not limited to, by virtue of any use of

Service Provider Materials, Third Party Materials or Open Source Materials. Bloomberg shall: (a) promptly notify Service Provider of the claim upon becoming aware of the same; (b) give Service Provider sole control over the defense and settlement of the claim (provided that Bloomberg shall have the right to participate with its own counsel at its own expense); (c) provide such assistance in the defense of the claim, at Service Provider's expense, as Service Provider may reasonably request; and (d) comply with any settlement or court order made in connection with the claim (e.g., relating to the future use of any infringing Deliverable), subject to Bloomberg's reasonable approval. Where such claim, suit or action arises under subsection (v), above, Service Provider agrees, at its sole expense, to: (A) procure for Bloomberg and its affiliates the right to continue to use the infringing Deliverables or portion thereof; (B) replace the infringing Deliverables or portion thereof with non-infringing, but functionally equivalent, items; (C) suitably modify the infringing Deliverables or portion thereof so that they are no longer infringing but still comply with the terms and conditions of this Agreement and the applicable SOW(s); or (D) if none of the foregoing options is reasonably available, accept return of the infringing Deliverables and refund any and all Fees and other amounts paid by Bloomberg to Service Provider in connection with the affected SOW(s). Bloomberg shall give Service Provider prompt written notice of, and the parties shall, at Service Provider's sole expense, reasonably cooperate in the defense of, any such claim, suit or action, including appeals and negotiations.

12.  *Limitation of Liability.*

> (a)   IN NO EVENT SHALL EITHER PARTY'S, INCLUDING ITS AFFILIATES, AGGREGATE LIABILITY TO THE OTHER PARTY OR ANY OTHER PERSON OR ENTITY FOR DIRECT DAMAGES ARISING UNDER THIS AGREEMENT AND/OR ANY SOW(S), REGARDLESS OF THE FORM OF ACTION, EXCEED THE GREATER OF (i) $2,000,000 OR (ii) THE TOTAL FEES PAID OR THERETOFORE REQUIRED TO HAVE BEEN PAID BY BLOOMBERG UNDER THIS AGREEMENT AND ALL SOW(S).
>
> (b)   IN NO EVENT SHALL EITHER PARTY OR ITS AFFILIATES BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, SPECIAL, OR OTHER SIMILAR DAMAGES, HOWEVER CAUSED, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF DATA, LOSS OF PROFITS OR LOSS OF BUSINESS, WHETHER OR NOT DUE TO THE FAULT OR NEGLIGENCE OF THAT PARTY, AND REGARDLESS OF WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.
>
> (c)   NOTWITHSTANDING THE FOREGOING SECTIONS 12(a) AND 12(b), NO LIMITATION ON EITHER PARTY'S LIABILITY SHALL APPLY TO: (i) CLAIMS OR DAMAGES ARISING UNDER OR IN CONNECTION WITH SECTIONS 3(d), 4, 7, 8 OR 11 OF THIS AGREEMENT; OR (ii) CLAIMS OR DAMAGES CAUSED BY THE NEGLIGENT OR WILLFUL ACTS OR OMISSIONS OF SUCH PARTY, ITS AFFILIATES OR ITS AND THEIR EMPLOYEES, AGENTS OR SUBCONTRACTORS.

13.  *Miscellaneous.*

(a)   More Favorable Provisions. Service Provider agrees that it shall afford to Bloomberg and its affiliates the benefit of any contractual provisions extended to another party for goods or services similar to those provided to Bloomberg on terms more favorable than those benefiting Bloomberg under this Agreement and/or any SOW, including, but not limited to, the fees for the Services.

(b)   Relationship of the Parties. Service Provider shall provide the Services pursuant to this Agreement on a professional basis as an independent contractor and shall not for any purpose be deemed an agent or employee of Bloomberg. This Agreement does not create a partnership, joint venture, agency or co-employer relationship between the parties. Neither party shall have any power to obligate or bind the other party in any manner whatsoever. Personnel supplied by Service Provider are employees of Service Provider only and will not for any purpose be considered employees or agents of Bloomberg.

(c)   Waiver and Severability. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder. No term or provision herein shall be deemed waived and no breach consented to, unless such waiver and consent shall be express and in writing and signed by the party in interest. Any such waiver and consent shall not constitute a waiver and consent to any other or subsequent breach. If any term or provision of this Agreement or the application thereof shall to any extent be held invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision hereof shall be valid and enforced to the fullest extent permitted by law.

(d)   Rights and Delegation. Notwithstanding anything to the contrary in this Agreement, any Bloomberg affiliate is entitled to exercise the rights of Bloomberg set forth herein on behalf of itself, Bloomberg or any other affiliate. Service Provider acknowledges and agrees that Bloomberg may delegate certain of its responsibilities, obligations and duties under or in connection with this Agreement to a third party or any affiliate of Bloomberg, which may discharge those responsibilities, obligations and duties on behalf of Bloomberg.

(e)   Assignment and Subcontracting. Service Provider may not assign, delegate or subcontract its rights or duties under this Agreement without the prior written consent of Bloomberg. Any attempted assignment in contravention of the foregoing restriction shall be void and of no effect. Bloomberg may assign this Agreement, in whole or in part, to any of its affiliates. Bloomberg's assignee shall be solely liable for any default or breach of this Agreement that arises or occurs on or after the effective date of the assignment and Bloomberg shall remain liable for any default or breach of this Agreement that arises prior to the effective date of the assignment during the period its was bound by this Agreement. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective permitted successors and assigns.

(f)     Force Majeure. Neither party shall be deemed to have defaulted or failed to perform hereunder if that party's inability to perform or default shall have been caused by an event or events beyond the control and without the fault of that party, including, but not limited to, acts of Government, embargoes, fire, flood, explosions, acts of God or a public enemy, terrorism, vandalism or civil riots. If such contingency occurs, written notice of the onset of the contingency shall be given by the party unable to perform. So long as any contingency continues, the affected party will use all best efforts to eliminate such conditions and will keep the other party fully informed at all times concerning the matters causing such delay or default and the prospects for their resolution. In the event the contingency continues for a period of more than fifteen (15) days, the other party, upon five (5) days written notice to the other party, may terminate this Agreement in whole or in part, with respect to the Services not already delivered or performed.

(g)     Headings. The headings of sections and paragraphs herein are included for convenience of reference only and shall not control the meaning or interpretation of any of the provisions of this Agreement.

(h)     Governing Law. The validity, construction and performance of this Agreement shall be governed by the laws of the United States of America and the State of New York, without giving effect to the choice of law provisions thereof. Any legal action, suit or proceeding arising out of or relating to this Agreement or the breach thereof shall be instituted in a federal or state court of competent jurisdiction in the State of New York, County of New York and each party hereby consents and submits to the personal jurisdiction of such court, waives any objection to venue in such court and consents to service of process by registered or certified mail, return receipt requested, at the address to which notices to such party shall be sent pursuant to this Agreement.

(i)     Entire Agreement. This Agreement, including all attached Exhibits and all SOW(s) executed by the parties hereunder, constitutes the entire understanding between Bloomberg and Service Provider with respect to the subject matter hereof and shall supersede all prior arrangements on such subject matter, whether made orally or in writing. All capitalized terms not defined in any Exhibit attached hereto or any SOW executed hereunder shall have the definitions given to them in this Agreement. Notwithstanding anything to the contrary in this Agreement or in any Exhibit attached hereto or any SOW executed hereunder, the parties expressly agree that in the event of a conflict, inconsistency or ambiguity between the terms and conditions of this Agreement and any SOW, the terms and conditions of this Agreement shall govern and control unless such SOW expressly indicates otherwise, by reference to specific applicable sections of this Agreement, and then only with respect to such SOW and not any other SOW. This Agreement may not be amended except by written instrument executed by authorized representatives of both Service Provider and Bloomberg.

(j)     Notice. All notices and other communications given or made pursuant hereto shall be in writing and shall be delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested), or overnight courier and addressed to the party's proper address as set forth in the beginning of this Agreement or to such other address or addressee as either party may from time to time designate to the other by

written notice. Any such notice shall be deemed to be given as of the date it is delivered to the recipient. All notices shall be addressed as follows:

If to Service Provider to:

_____

_____

_____

with a copy to:

_____

_____

_____

If to Bloomberg to:

Bloomberg L.P.
731 Lexington Avenue
New York, New York 10022
Attn: [FILL IN NAME]

with a copy to:

Bloomberg L.P.
731 Lexington Avenue
New York, New York 10022
Attn: Karl P. Kilb, General Counsel

(k)    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but both of which, when taken together, shall constitute one and the same instrument.

(l)    Survival. Sections 1(e), 1(f), 1(g), 1(h), 3(d), 4, 7, 8 (excluding Section 8(f)), 9, 10(a), 11, 12, and 13(d), 13(e), 13(g), 13(h), and 13(l) shall survive the termination of this Agreement for any reason.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

_____

By: _____
Name:
Title:

BLOOMBERG L.P.
By: Bloomberg Inc., its General Partner

By: _____
Name:
Title:

## Exhibit A

## FORM OF SOW

### Statement of Work No. __

This Statement of Work (this "SOW"), is entered into by and between _____ ("Service Provider") and Bloomberg L.P. ("Bloomberg") as of this __ day of _____, 20__, and is governed by the terms of the Master Services Agreement, dated _____, 20__, in effect by and between Service Provider and Bloomberg (the "Agreement"). All capitalized terms not defined in this SOW shall have the definitions given to them in the Agreement. Notwithstanding anything to the contrary herein, the parties expressly agree that, in the event of a conflict, inconsistency or ambiguity between the terms and conditions of this SOW and the Agreement, the terms and conditions of the Agreement shall govern and control unless this SOW expressly indicates otherwise, by reference to specific applicable sections of the Agreement, and then only with respect to this SOW and no other statement of work. This SOW may not be amended except by written instrument executed by authorized representatives of both Service Provider and Bloomberg.

1. **Services and Deliverables to be Provided by Service Provider:**

[ADD DESCRIPTION]

2. **Performance and Delivery Schedule:**

[ADD PERFORMANCE AND DELIVERY SCHEDULE]

3. **Acceptance Testing:**

The Deliverables shall be subject to acceptance testing pursuant to Section 5 of the Agreement.

4. **Fees:**

[ADD FEES]

|  |  |
|---|---|
| _____ | **BLOOMBERG L.P.**<br>By: Bloomberg Inc., its General Partner |
| By: _____<br>  Name:<br>  Title: | By: _____<br>  Name:<br>  Title: |

## Exhibit B

## MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

[ATTACHED]

## SCOPE OF SERVICES

- Perform walkthroughs on all occupied floors by Bloomberg at our headquarters located at 731 Lexington Avenue, New York, NY 10022 in order to check for damaged or broken components, such as locks, cabinets, doors, stairs, ceiling tiles and wall damage.
- Replacing all damaged ceiling materials before the commencement of each new business day, including any damages caused from the previous night by new electrical or mechanical work to such ceilings.
- Fixing and/ or replacing damaged doors or locks.
- Maintaining and repairing any damaged millwork at 731 Lexington Avenue
- Fabricating any new millwork projects requested by Bloomberg. All fabrication to take place on-site at the Bloomberg workshop
- Provide sketches for all scopes of work and shop drawings for fabrication, for review and approval prior to the commencement of fabrication
- Providing millwork for special events and off-site locations as requested from time to time by Bloomberg L.P
- Maintaining bit set and making modifications as required.
- Providing labor and materials for major in-house projects.
- Providing labor and materials for specialty projects using specialty materials.
- Be prepared to assist Bloomberg L.P in case of emergency situations as necessary.
- Researching, identifying and providing sources for new products and innovative materials.
- Using the highest standards of professional ability when it executes work with the materials required including, but not limited to, plexiglass, acrylics and aluminum.
- Fabricating custom millwork and shipping to various Bloomberg international sites wherever Bloomberg is located.
- Fabricating all custom crates required to ship Bloomberg products worldwide.
- Providing labor and material to perform all work per Bloomberg FDSK request (or other Bloomberg designated ticket system) for carpentry. FDSK requests are internal ticketing system by which work shall be primarily assigned by Bloomberg's Facilities Management Team

Details of Your Submission:
We request you submit Two (2) hard copies to be printed on 8 1/2" X 11" paper, one side per sheet, each page is to be numbered, and One (1) CD labeled with the company name and the Invitation to Bid title, Sealed Bids are due by 12:00pm September 21, 2010. Proposals will be sent to:

Javier Paulino
Bloomberg L.P.
731 Lexington, Ave
NY, NY 10022

Alternate Purchasing Contact if Javier is not available:    Louis Molinaro (212) 617-3027