```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
NASTASI & ASSOCIATES, INC.,                                            :
                                                                       :
                            Plaintiff,                                 :        18-CV-12361 (JMF)
                                                                       :
            -v-                                                        :        MEMORANDUM OPINION
                                                                       :              AND ORDER
BLOOMBERG, L.P., et al.,                                               :
                                                                       :
                            Defendants.                                :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Nastasi & Associates, Inc. ("Nastasi") moves for reconsideration of the Court's March 11, 2020 Memorandum Opinion and Order, ECF No. 172 ("Mem. Op."), which concluded that Nastasi lacks standing to bring claims that it assigned to the Franklin D. Nastasi Trust ("Trust") before commencing this lawsuit. *See* ECF No. 174. Defendants squarely raised the standing issue in their joint motion to dismiss, which cited Nastasi's own allegations in a related state-court case that "[e]ffective January 1, 2017, the [Franklin D. Nastasi] Trust became the owner of all of Nastasi & Associates's assets, including the rights to all of Nastasi & Associates's accounts receivables." ECF No. 148 ("MTD Mem."), at 8.[1] In its Opposition, Nastasi did not contest the veracity of its state-court allegations or submit any evidence to dispute the Trust's ownership, arguing only that Nastasi is still "the proper party in interest" because it "participated in all of the acts which gave rise to the allegations in the [complaint]."

---

[1] *See Franklin D. Nastasi Trust v. Bloomberg L.P.*, No. 603508/2017 (N.Y. Sup. Ct. June 6, 2019), Docket No. 1 (Complaint filed on April 22, 2017), ¶ 9; *id.* at Docket No. 28 (Memorandum of Law filed on October 20, 2017), at 1; *id.* at Docket No. 38 (Amended Complaint filed on February 14, 2018), ¶ 11; *id.* at Docket No. 103 (Second Amended Complaint filed on March 5, 2019), ¶ 33.

ECF No. 167 ("MTD Opp'n"), at 12-13.  Now, however, through a motion for reconsideration, Nastasi seeks to introduce evidence to argue that it did not, in fact, assign its claims to the Trust. *See* ECF No. 175 ("Pl. Mem."), at 11-18; ECF Nos. 176, 181.

Nastasi's efforts are too little too late, and its motion is thus denied.  It is well established that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and ellipsis omitted).  Thus, under Rules 59(e) and 60(b)(2) of the Federal Rules of Civil Procedure, a party may not seek relief based on evidence that was not previously submitted to the Court if the party reasonably could have presented the evidence, but chose not to.  *See Karimian v. Time Equities, Inc.*, No. 10-CV-3773 (AKH), 2013 WL 2254557, at *2 (S.D.N.Y. May 22, 2013) ("A motion for reconsideration is not an opportunity to advance new facts, issues or arguments not previously presented to the Court." (internal quotation marks omitted)); *Pla v. Renaissance Equity Holdings LLC*, No. 12-CV-5268 (JMF), 2013 WL 3185560, at *2 (S.D.N.Y. June 24, 2013) (denying a motion for reconsideration of dismissal under Rule 12(b)(1) because "Plaintiffs were given ample opportunity to submit evidence to the Court to substantiate their claims . . . but they failed to do so"); *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) ("In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is truly newly discovered or could not have been found by due diligence." (internal quotation marks and ellipsis omitted)).  The documents Nastasi now submits were — with one exception — all either in its possession when it filed its Opposition (indeed, as the Court noted, the various security and loan agreements were in its *exclusive*

possession, *see* Mem. Op. 4-5 n.2) or, in the case of the declaration by Anthony Nastasi, readily capable of being produced and submitted. The only exception is an email exchange between counsel a few months after Nastasi filed its Opposition, *see* ECF No. 176-5, but even that occurred months before the Court issued its Memorandum Opinion and Order. Rather than submitting any of these documents, Nastasi concluded that "its explanation as to why it did have standing . . . was sufficient." *See* Pl. Mem. 14. Having put all of its eggs in that basket, Nastasi is not now entitled to produce a different basket.

Nastasi argues that its failure to timely submit the evidence is the type of "mistake" that may be excused under Rule 60(b)(1). *See* Pl. Mem. 12. But the Court's discretion under Rule 60(b)(1) is "cabined" by the so-called *Pioneer* factors: (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See William v. City of New York*, 727 F. App'x 30, 31 (2d Cir. 2018) (summary order) (discussing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Under the Second Circuit's "hard line" approach to applying *Pioneer*, "which emphasizes the reason for the delay," Nastasi has not demonstrated excusable neglect. *See In re Enron Corp.*, 419 F.3d 115, 122-23 (2d Cir. 2005). Defendants explicitly raised the standing issue over two months before Nastasi filed its Opposition and almost nine months before the Court issued its Memorandum Opinion and Order. *See* MTD Mem. (filed on June 17, 2019); MTD Opp'n (filed on August 26, 2019); Mem. Op. (filed on March 11, 2020). The issue was flagged even earlier in two individual Defendants' memoranda of law in support of Defendants' original motion to dismiss. *See* ECF No. 129, ¶ 6 (memorandum filed by

Eurotech Construction Corp. on April 17, 2019); ECF No. 122, at 5 n.3 (memorandum filed by Turner Construction Co. on April 17, 2019). At no point throughout this extended period did Nastasi seek to introduce evidence disputing the Trust's ownership of its claims; to the contrary, Nastasi appeared to admit that its state-court allegations were accurate. *See* MTD Opp'n 13 (conceding that the Trust "may have the rights to Nastasi & Associates' receivables," referring to the language of the state-court allegations). Nastasi provides no legitimate reason for its substantial delay. Allowing Nastasi to change tack now after such a substantial delay would prejudice Defendants, and the good faith factor, even assuming it weighed in Nastasi's favor, would not be sufficient to overcome the other factors. *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) (noting that "it is the third factor — the reason for the delay — that predominates, and the other three are significant only in close cases").

In the alternative, Nastasi seeks relief under Rule 60(b)(6)'s catchall provision for "any other reason that justifies relief." *See* ECF No. 180 ("Reply"), at 9. But "Rule 60(b)(6) applies only when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule and there are extraordinary circumstances justifying relief." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (internal quotation marks omitted). Here, as discussed, Nastasi's asserted grounds for relief are recognized in Rule 60(b)'s first and second clauses. And, in any event, Nastasi fails to show "extraordinary circumstances justifying relief" or "good cause for the failure to act sooner." *See Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006) (internal quotation marks omitted).

Furthermore, even if the Court were to consider Nastasi's belatedly proffered evidence, it would not suffice to establish standing. In fact, the Security Agreement confirms the Court's

conclusion that the phrase "all of [Nastasi's] assets" encompassed "claims, demands and any other property, rights and interest of the undersigned." ECF No. 176-1, at 12 (Ex. A, Sch. A) ("Security Agreement"); *see* Mem. Op. 4.  In addition, none of Nastasi's new evidence, which centers on an assignment to the Trust in 2013, *see* ECF No. 176-4, at 6 (Ex. G), sheds any light on what happened on January 1, 2017 — when, according to Nastasi itself (both in the state-court case and, by conceding the state-court allegations, in this case), the Trust "became the owner of all of [Nastasi's] assets."[2]  Indeed, the email exchange Nastasi submits suggests that there are other "legal documents purporting to show the transfer of [Nastasi]'s assets to the Trust." ECF No. 176-5, at 5.  Nastasi does not submit these documents or explain how they affect the argument it now offers.  Nastasi thus fails again to meet its burden.

---

[2] In fact, Nastasi's own evidence hints at a possible explanation of how the Trust came to be "the owner of all of Nastasi & Associates's assets." By acquiring the Security Agreement and Nastasi's debt in 2013, the Trust obtained a "present first priority security interest" in Nastasi's claims and other assets. ECF No. 176-1, at 6 (Ex. A, ¶ 2); ECF No. 176-4, at 6 (Ex. G, at 1).  As a result, the Trust had a right to obtain the assets as collateral in the event that Nastasi defaulted on its debt. *See* ECF No. 176-1, at 7 (Ex. A, ¶ 4) (authorizing the securityholder to make any debts "due an[d] payable" if Nastasi "shall become insolvent, or suspend business"); *id.* at 18-20 (Ex. B, ¶ 2(a), (g)) (defining events of default for Nastasi's debt to include the "[f]ailure to make any payment of principal or interest," as well as the lender's determination "that one or more conditions exist or events have occurred which may result in a material adverse change in the business, properties or financial condition [of Nastasi]"). By Nastasi's own admission, its business collapsed some time before it filed the present suit. *See* Pl. Mem. 1 (stating that "Nastasi ultimately became insolvent"); ECF No. 142, at ¶ 157 (alleging that "Nastasi & Associates began to spiral downward, and a series of related events unfolded causing it to collapse"); MTD Opp'n 12 (stating that Nastasi was "destroyed"). It may be that, as a result of Nastasi's collapse, the Trust seized the collateral on January 1, 2017. Regardless, it is Nastasi's burden to prove standing, and Nastasi's new evidence does not make it any more likely that "sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff['s] claims." *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (internal quotation marks omitted).

Nastasi's remaining arguments are easily rejected. For example, Nastasi argues that it was not given the opportunity to contest the accuracy of its own state-court allegations and the appropriateness of the Court's consideration of them. *See* Pl. Mem. 18-20; Reply 3-4 (citing *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014)). But that is false. Defendants' motion to dismiss explicitly cited Nastasi's state-court allegations to challenge whether Nastasi in fact had standing. *See* MTD Mem. 7-8 & n.5. This was not a situation in which "[t]here was no indication that the separate issue of . . . standing . . . might arise," or in which Nastasi was "arbitrarily prevent[ed]" from submitting evidence by "limits on pages." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 122; *see also* ECF No. 168 (evidence submitted in support of Nastasi's Opposition). Thus, when Nastasi declined to dispute the Trust's ownership, the Court properly proceeded to evaluate whether Nastasi had met its burden to prove standing. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (placing parties on "renewed notice of both the right to introduce such evidence [of standing] and the plaintiff's burden of proof to do so even at the motion-to-dismiss stage"); *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 354 n.2 (S.D.N.Y. 2002) ("[W]here a party has had an opportunity to submit affidavits or other proof to oppose the factual challenge raised by an adversary on a motion made pursuant to Rule 12(b)(1) and has failed to submit such evidence or otherwise waived the opportunity to do so, then the Court may properly address the factual contentions underlying the Rule 12(b)(1) motion." (internal quotation marks omitted)).

Nastasi also argues that, under Rule 17(a), it should be given the opportunity to have the Trust join the action or ratify Nastasi's right to assert the claims at issue. *See* Pl. Mem. 20-22, 25. But, as the Court noted in its March 11th Memorandum Opinion and Order, Nastasi's lack of

6

standing is an issue of subject-matter jurisdiction, not an issue of the proper party in interest under Rule 17(a). *See* Mem. Op. 3-4 n.1. Thus, joining or substituting the Trust at this point cannot cure Nastasi's lack of standing at the case's inception. *See Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-CV-0722 (PAE), 2012 WL 4849146, at *8 (S.D.N.Y. Oct. 12, 2012) (holding that dismissal was required where "neither of the plaintiffs here had Article III standing on *any* of their claims as of the date the original Complaint was filed"); *see also Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 409 F. Supp. 3d 261, 269 & n.8 (S.D.N.Y. 2019) (collecting cases). Moreover, even if the issue here were properly analyzed under Rule 17(a), Nastasi had a "reasonable time" to seek joinder or ratification before the Court issued its Memorandum Opinion and Order. *See* Fed. R. Civ. P. 17(a)(3); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 380 F. Supp. 2d 243, 249 (S.D.N.Y. 2005) (concluding that the plaintiffs "had a reasonable time to respond to [the defendant's] Rule 17(a) objection" because the "plaintiffs did not serve their opposition papers . . . until more than five months later . . . giving them ample opportunity to adduce evidence needed to establish valid assignments").

Finally, Nastasi is not entitled to amend. *See* Pl. Mem. 22-25. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In this case, leave to amend is not warranted because Nastasi failed to request leave in its Opposition, *see* Reply 10, and because amendment would be futile given Nastasi's failure twice now to prove that it in fact has standing, *see, e.g.*, *Holcombe v. Ingredients Solutions, Inc.*, 797 F. App'x 630, 635 (2d Cir. 2020) (summary order) (holding that leave to amend was not warranted because the plaintiff did not request leave in her

7

opposition brief and failed to "explain[] on appeal how she would cure the Article III standing deficiencies"); *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 512 (S.D.N.Y. 2019) ("Because Plaintiffs lack standing to sue, amendment would be futile."). Furthermore, Nastasi was previously granted the opportunity to amend its complaint to address the issues raised in Defendants' original motion to dismiss, including the standing defect, and Nastasi was expressly warned that it would "not be given any further opportunity" to do so. ECF No. 134; *see also* ECF No. 129, at ¶ 6; ECF No. 122, at 5 n.3. Accordingly, leave to amend is denied.

In short, Nastasi's motion for reconsideration must be and is denied. The Clerk of Court is directed to terminate ECF Nos. 174, 176, and 181.

SO ORDERED.

Dated: May 20, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge